Rafey S. Balabanian (SBN – 315962)
rbalabanian@edelson.com
Todd Logan (SBN – 305912)
tlogan@edelson.com
Brandt Silver-Korn (SBN – 323530)
bsilverkorn@edelson.com
EDELSON PC
123 Townsend Street
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Attorneys for Plaintiff*

**P O R T E R   |   S C O T T**
A PROFESSIONAL CORPORATION
Stephen E. Horan, SBN 125241
William E. Camy, SBN 291397
Matthew W. Gross, SBN 324007
350 University Avenue, Suite 200
Sacramento, California 95825
TEL: 916.929.1481
FAX: 916.927.3706
*Attorneys for Defendants*
**OFFICE OF COUNTY COUNSEL**
**COUNTY OF BUTTE**
Bruce S. Alpert, SBN 075684
Brad J. Stephens, SBN 212246
25 County Center Drive
Oroville, CA 95965
TEL: (530) 538-7621
FAX: (530) 538-6891

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

| | |
|---|---|
| DARWIN CRABTREE,<br><br>                              *Plaintiff*,<br>v.<br><br>COUNTY OF BUTTE, KRISTIN MCNELIS, KATHARYN SCHWARTZ, EDWARD SZENDREY, JANE DOE, AND JOHN DOES 1-20,<br><br>                              *Defendants*. | No. 2:20-cv-00675-KJM-KJN<br><br>**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT [MOTION TO COMPEL, DKT. 39]**<br><br>Hearing:        December 10, 2020<br>Time:           10:00 am<br>Location:      United States Courthouse<br>                   501 I Street<br>                   Sacramento, CA 95814<br>Judge:          Hon. Kimberly J. Mueller<br>Magistrate: Hon. Kendall J. Newman |

Pursuant to Local Rule 251(c), the Parties submit the following Joint Statement Re: Discovery Disagreement.

I.   **JOINT SUMMARY OF DISPUTE AND PARTIES' MEET AND CONFER**

The Parties dispute whether a twelve (12) page memorandum authored by former Butte County Deputy District Attorney Matthew Taylor, regarding Plaintiff Darwin Crabtree's 2017 motion to vacate his criminal convictions, is discoverable.

Defendant County of Butte contends that the Taylor Memorandum is protected from discovery by (i) the work-product doctrine, and/or (ii) the deliberative process privilege.

Plaintiff Darwin Crabtree contends that the Taylor Memorandum is not protected by these privileges, that the memorandum is discoverable, and that the memorandum must be produced to Plaintiff immediately.

On October 19, 2020, after exchanging letters outlining their respective positions, the Parties met and conferred via telephone in an attempt to resolve their dispute. Plaintiff Darwin Crabtree was represented by Brandt Silver-Korn and Defendant County of Butte was represented by William Camy and Matthew Gross. The Parties could not resolve their dispute and agreed that they were at an impasse.

Plaintiff now moves for an order compelling Defendant County of Butte to produce the memorandum authored by Matthew Taylor. *See* Dkt. 39.

II.   **JOINT SUMMARY OF ACTION AND AT-ISSUE MEMORANDUM**

A.   **Summary of Action**

In 1991, Plaintiff Darwin Crabtree was prosecuted by Defendant County of Butte on charges that he had sexually molested three of his children. The charges stemmed from allegations Plaintiff's children made during (i) therapy sessions with Defendant Katharyn Schwartz—a Butte County family therapist, and (ii) interviews by Defendant Kristin McNelis— an investigator for the Butte County District Attorney's Office. Plaintiff Crabtree was convicted on certain of these charges in December 1991 and sentenced to twenty-four (24) years in prison.

1   Plaintiff Crabtree was then imprisoned for approximately nine (9) years and, upon his release in

2   2001, was required to register as a sex offender for life.

3          On August 24, 2017, with the alleged help of the Northern California Innocence Project,

4   Plaintiff Crabtree moved to vacate his convictions, pursuant to California Penal Code

5   §1473.7(a)(2), on grounds of "newly discovered evidence of actual innocence." The primary

6   evidence of actual innocence were formal recantation statements made by Plaintiff's children in

7   2008—ten years earlier—which stated, *inter alia*, that Defendant Schwartz and Defendant

8   McNelis had coerced them into making false allegations against their father. The County

9   disputes any statements were coerced.

10          On January 17, 2018, the Honorable Kimberly Merrifield granted Plaintiff's motion

11   without findings and vacated his convictions.

12          On December 10, 2019, Plaintiff filed this action, alleging that his 1991 arrest and

13   prosecution were the consequence of various unconstitutional actions taken by Defendants.

14   Relevant here, Plaintiff alleges, *inter alia*, that: (i) Defendant McNelis coerced Plaintiff's

15   children's allegations and testimony, disregarded exculpatory evidence, fabricated evidence, and

16   caused Plaintiff to be maliciously prosecuted; (ii) Defendant Szendrey—Defendant McNelis's

17   supervisor at the Butte County District Attorney's Office—failed to adequately train and/or

18   supervise Defendant McNelis; and (iii) Defendant County of Butte failed to adequately train

19   Defendant McNelis. Defendants deny each of these allegations.

20          **B.     The Taylor Memorandum**

21          On June 22, 2017, Butte County Deputy District Attorney Matthew Taylor authored a

22   twelve (12) page memorandum regarding Plaintiff's motion to vacate his criminal convictions.

23   The memorandum was sent to Butte County District Attorney Mike Ramsey.

24          Plaintiff's understanding, based on a personal conversation he had with Matthew Taylor,

25   is that the memorandum: (i) details certain failures of the Butte County District Attorney's Office

26   in prosecuting his criminal case, (ii) was circulated within the Butte County District Attorney's

1   Office as a "cautionary tale," and (iii) led Defendant County of Butte to concede that Plaintiff's

2   motion to vacate his criminal convictions should be granted. Consequently, Plaintiff contends

3   that the information contained in this memorandum is highly-relevant to Plaintiff's allegations

4   that Defendant County of Butte failed to adequately train Defendant McNelis, that Defendant

5   Szendrey failed to adequately supervise Defendant McNelis, and that Defendant McNelis

6   coerced allegations from Plaintiff's children, disregarded exculpatory evidence, and caused

7   Plaintiff to be prosecuted with malice.

8          Defendant County of Butte contends that the Taylor memo is protected by qualified

9   immunity under the work product doctrine and privileged under the deliberative process

10   privilege. A new form of relief was created in 2017 by Penal Code § 1473.7, allowing a person

11   convicted to file a motion to vacate a conviction.  Mr. Crabtree moved to vacate his conviction

12   under this new statute on or about August 24, 2017. Defendant contends the Taylor memo was

13   prepared to analyze Mr. Crabtree's Motion to Vacate under Penal Code § 1473.7. Mr. Taylor had

14   no involvement in Mr. Crabtree's prosecution and no personal knowledge of those events.

15   Defendant contends the Taylor memo contains the mental thoughts, impressions, and

16   conclusions of Deputy District Attorney Matthew Taylor about the motion. Defendant contends

17   the Taylor memo is protected both in relation to the concluded 1473.7 litigation and the present

18   case which is a related proceeding and relies on the relief obtained in the earlier 1473.7 matter.

## III.    PLAINTIFF'S CONTENTIONS

### A.    Summary of Plaintiff's Argument

21          The Taylor Memorandum is likely a smoking gun. It contains the Butte County District

22   Attorney's Office's review of its failures prosecuting Plaintiff's criminal case. It led Defendant

23   to concede that Plaintiff should be exonerated. It was circulated throughout the DA's Office as a

24   "cautionary tale." And its author—a Deputy District Attorney—has conceded to Plaintiff that his

25   criminal case was so full of "red flags," it should have been dropped immediately. Put another

26   way, the Taylor Memorandum sheds light on this lawsuit's core allegation: that Defendants

1 violated Plaintiff's constitutional rights when they prosecuted him in 1991—sending him to

2 prison for nearly a decade and forcing him to register as a sex offender for life.

3       Now, Defendant County of Butte looks to cover its tracks by refusing to produce the

4 Taylor Memorandum. This position is not only unjust but also plainly improper under the

5 Federal Rules. The Taylor Memorandum stands to be a central—if not dispositive—document in

6 Plaintiff's case. It is neither protected work product nor protected by the deliberative process

7 privilege. The Court should compel Defendant to immediately produce the Taylor Memorandum.

8       **B.**    **Relevant Procedural Background.**

9       On July 1, 2020, Plaintiff served his First Set of Requests for Production to Defendant

10 County of Butte. *See* Declaration of Brandt Silver-Korn ("Silver-Korn Decl.") ¶ 3, Exhibit 1

11 (Plaintiff's First Set of RFPs). Plaintiff requested, *inter alia*: "All Documents and

12 Communications sent, authored, or received by Matthew Taylor Related To . . . Plaintiff."

13 Exhibit 1, RFP No. 7.

14       On August 14, 2020, the County served its Responses to Plaintiff's First Set of RFPs, *see*

15 Silver-Korn Decl. ¶ 4, and on August 18, 2020, the County served Amended Responses to

16 Plaintiff's First RFPs and a corresponding privilege log. *See* Silver-Korn Decl. ¶¶ 5-6, Exhibit 2

17 (Amended Responses to Plaintiff's First Set of RFPs); Exhibit 3 (First Privilege Log). The First

18 Privilege Log indicated that the County had withheld eight (8) documents, including a

19 "Memorandum drafted by Deputy District Attorney Matthew Taylor" on the basis of the work-

20 product doctrine and deliberative process privilege. Exhibit 3 at 1.

21       On September 1, 2020, Plaintiff served the County with a letter outlining numerous

22 deficiencies with the County's First Privilege Log. *See* Silver-Korn Decl. ¶ 7, Exhibit 4

23 (Plaintiff's September 1, 2020 Letter). These deficiencies included, *inter alia*, the fact that the

24 County had withheld a memorandum authored by Deputy District Attorney Matthew Taylor but

25 provided no details whatsoever about the contents of the memo—or enough context to allow

26 Plaintiff to evaluate the County's claims of privilege. *See* Exhibit 4 at 2 ("The County . . . fails to

1  identify the date Mr. Taylor authored the memorandum, provide a description of the contents of
2  the memorandum, and identify who received the memorandum.").

3        On September 8, 2020, in response to Plaintiff's September 1, 2020 Letter, the County
4  served Plaintiff an "updated" privilege log. *See* Silver-Korn Decl. ¶ 8, Exhibit 5 (Updated
5  Privilege Log). The Updated Privilege Log provided the following description about the
6  withheld memorandum: "Memorandum drafted by Deputy District Attorney Matthew Taylor on
7  June 22, 2017 to Michael Ramsey regarding Motion to Vacate Conviction of Darwin Crabtree."
8  Exhibit 5 at 1. It offered no further details about the memo's contents. *See id.*

9        On October 7, 2020, Plaintiff served the County a letter requesting that the County
10  withdraw its claims of privilege for six (6) documents the County had withheld—including the
11  Taylor Memorandum—on the basis that the respective privilege claims were improper. *See*
12  Silver-Korn Decl. ¶ 9, Exhibit 6 (Plaintiff's October 7, 2020 Letter). On October 19, 2020, the
13  County withdrew its claims of privilege on five (5) of the six (6) challenged documents but
14  refused to produce the Taylor Memorandum.[1] *See* Silver-Korn Decl. ¶ 10, Exhibit 7 (County of
15  Butte's October 19, 2020 Letter). Specifically, the County conveyed that it intended to stand on
16  its claim that the Taylor Memorandum was protected from discovery on the basis of the work-
17  product doctrine and/or the deliberative process privilege. *See id.*

18        On October 19, 2020, the Parties met and conferred telephonically in attempt to resolve
19  their dispute without motion practice. *See* Silver-Korn Decl. ¶ 12. The conference confirmed that
20  the Parties had reached an impasse, and on October 22, 2020 Plaintiff Crabtree moved for an
21  order compelling production of the Taylor Memorandum. *See* Dkt. 39.

22        **C.**    **Plaintiff's January 2018 Conversation with Matthew Taylor.**

23        Plaintiff Crabtree first became aware of the Taylor Memorandum in January 2018. *See*
24  Declaration of Darwin Crabtree ("Crabtree Decl.") ¶¶ 1-2. Following a press conference that the

25
26  [1]    Two of the documents produced by the County were in fact emails *attaching* the Taylor Memorandum. *See*
Silver-Korn Decl. ¶ 11.

Butte County District Attorney's Office held to announce Plaintiff Crabtree's exoneration, Plaintiff and Deputy District Attorney Matthew Taylor struck up a conversation. *See id*. During that conversation, Mr. Taylor confided to Plaintiff that Plaintiff's case had made "such an impact" on the District Attorney's Office that a "memo" was circulated within the Office "as a cautionary tale." *Id*. ¶ 2.

During that conversation, it became Plaintiff's understanding that the memo (i) details certain failures of the Butte County District Attorney's Office in prosecuting his criminal case, and (ii) led Defendant County of Butte to concede that Plaintiff's motion to vacate his criminal convictions should be granted. *See id*. ¶ 3.

Plaintiff's understanding was informed, in part, by a previous conversation he had with Mr. Taylor. In the weeks before the press conference, Mr. Taylor privately admitted to Plaintiff that Plaintiff's criminal case was so full of "red flags" that it should have been dropped immediately. *See id*. ¶ 4.

### D. It is Improper for the County to Withhold the Taylor Memorandum on the Basis of the Work-Product Doctrine.

Documents are only protected work product when they are "prepared by a party or his representative in anticipation of litigation." *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011); *see also Spence v. Kaur*, No. 2:16-cv-1828, 2019 WL 3842867, at *21 (E.D. Cal. Aug. 15, 2019) (Newman, J.), *reconsideration denied*, 2020 WL 2468090 (E.D. Cal. May 13, 2020) (same). "The privilege is intended to preserve the privacy of attorneys' thought processes, and to prevent unnecessary intrusion by opposing parties and their counsel." *Cravalho v. Merced City Sch. Dist.*, No. 1:05-cv-0669, 2006 WL 1816990, at *2 (E.D. Cal. July 3, 2006) (citation omitted).

The Taylor Memorandum is not protected work product.

#### 1. The Taylor Memorandum was Not Prepared in Anticipation of Litigation

To begin, by the County's own admission, the Memo was not prepared in anticipation of litigation. *See* Exhibit 5 (claiming that memo was drafted "regarding Motion to Vacate

1  Conviction of Darwin Crabtree"). Instead, it was drafted in response to Plaintiff's motion to

2  vacate his criminal convictions—more than two (2) years before this lawsuit was filed. *See id.*;

3  *Cf.* Crabtree Decl. ¶ 2 (memo circulated within Butte County District Attorney's Office, prior to

4  Plaintiff's motion to vacate, "as a cautionary tale").

5        The County first tries to walk back this admission by arguing that a motion to vacate a

6  criminal conviction is really the same thing as litigation, purportedly because "it is self-evident

7  that overturning [a] criminal conviction would lead to a civil lawsuit." *See* Exhibit 7 at 2. That's

8  nonsense. If the County was correct (it is not), *any* government document prepared in

9  anticipation of, *inter alia*, an adversarial habeas petition, direct criminal appeal, or motion to

10  vacate criminal convictions would automatically be protected work product—simply because,

11  years down the road, the proceedings may "lead to a civil lawsuit." *Id.* That's simply not the law.

12  *See e.g.*, *Premier Harvest LLC v. Axis Surplus Ins. Co., No.* C17-0784-JCC, 2017 WL 6026949,

13  at *2 (W.D. Wash. Dec. 5, 2017) ("The [mere] fact that a defendant anticipates the contingency

14  of litigation is not sufficient to invoke discovery protections.") (citing *Binks Mfg. v. Nat'l Presto*

15  *Indus., Inc.,* 709 F.2d 1109, 1119 (7th Cir. 1983) (internal quotations omitted); *Umpqua Bank v.*

16  *First Am. Title Ins. Co.*, 2011 WL 997212, at *4 (E.D. Cal. Mar. 17, 2011) (work-product

17  doctrine only protects documents "created 'because of' actual or impending litigation").

18        Perhaps realizing its first argument is too sweeping, the County next claims—

19  remarkably—that it was able to anticipate this particular lawsuit in June 2017 because "***the facts***

20  ***of this case***" made it "***apparent***" there would be future litigation. *See* Exhibit 7 at 2 (emphasis

21  added). Putting aside that the County all-but-admits its own liability here, the County still hasn't

22  ducked its problems: the County still has not explained how the creation of the Memo had

23  anything to do with the litigation it purports to have anticipated. *See Umpqua Bank*, 2011 WL

24  997212, at *4 (a party claiming privilege "must demonstrate, by specific evidentiary proof of

25  objective facts, that a reasonable anticipation of litigation existed when the document was

26  produced, *and that the document was prepared and used . . . to prepare for the litigation*")

1   (emphasis added) (citation omitted); *see also Schoenmann v. Fed. Deposit Ins. Corp.*, 7 F. Supp.

2   3d 1009, 1013 (N.D. Cal. 2014) ("Work product is the product of [an attorney's] effort, research

3   and thoughts in the preparation of the client's case.").

4           Moreover, even assuming that the County did prepare the Memo for both Plaintiff's

5   motion to vacate and for future litigation (it did not), the County would still have to show that

6   that the Memo was drafted "because of" that future litigation. *See Gordon v. Nexstar Broad.,*

7   *Inc.*, No. 1:18-CV-0007-DADJLT, 2019 WL 2177656, at *5 (E.D. Cal. May 20, 2019) ("Where

8   documents are prepared for reasons in addition to the prospect of litigation, the party asserting

9   the privilege must demonstrate the document was prepared 'because of' litigation") (citation

10  omitted); *see also Anderson v. Marsh*, 312 F.R.D. 584, 593 (E.D. Cal. 2015) ("To be protected

11  by the doctrine, the primary motivating purpose behind the creation of the materials must be to

12  aid in possible future litigation."). Because the County has not made this showing—or anything

13  close to it—the County may not invoke work-product protection. *See Spence*, 2019 WL

14  3842867, at *21 ("The party asserting the work product privilege bears the burden of proving

15  that the material withheld meets the standards established for material to be classified as work

16  product.") (citation omitted).

17          2.      The Memo Was Not Prepared by a Party or for a Party by his Representative

18          While the County's work-product claim falls short on the 'anticipation of litigation'

19  prong alone, the County likewise fails to establish that the Memo was prepared by a "party or his

20  representative." *Richey*, 632 F.3d at 567. According to the County, the Memo was authored by

21  Deputy District Attorney Matthew Taylor, who then sent it to District Attorney Mike Ramsey.

22  *See* Exhibit 5 at 1. But the County offers no evidence that Matthew Taylor was either

23  representing the County of Butte or was acting in the capacity of the County himself when he

24  prepared the Memo. *See* Exhibits 5 at 1; Exhibit 7 at 2.

25          The County simply states—without explanation—that Matthew Taylor was a "'party or

26  his representative' through the common interest doctrine . . . [because the] District Attorney and

County Counsel have a shared and common interest for the citizens of Butte County." *See* Exhibit 7 at 2. Notably, the County never actually claims or establishes that Matthew Taylor was acting as County Counsel when he prepared the Memo. *Spence*, 2019 WL 3842867, at *21 ("The party asserting the work product privilege bears the burden of proving that the material withheld meets the standards established for material to be classified as work product."). On the other hand, by far the more plausible interpretation of Taylor-Ramsey correspondence is that the Memo was simply prepared by a subordinate in the Butte County District Attorney's Office (Taylor), who then sent it to his boss (Ramsey).

The Memo is not protected work product and must be produced to Plaintiff.

### E. It is Improper for the County to Withhold the Taylor Memorandum on the Basis of the Deliberative Process Privilege.

The deliberative process privilege applies to documents (i) "generated before the adoption of an agency's policy or decision," (ii) containing "opinions, recommendations, or advice about agency policies." *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). It is a qualified privilege. *See id.* That means that even if a government document reflects predecisional deliberation, it is discoverable if the requesting party's "need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *Id*.

Courts in this Circuit weigh between four (4) and six (6) factors (the "*Warner*" factors) in this inquiry. *See Oceana, Inc. v. Ross*, 2020 WL 2128853, at *5 (N.D. Cal. May 5, 2020); *see also L.H. v. Schwarzenegger*, No. S-06-2042 LJJGGH, 2007 WL 2009807, at *5 (E.D. Cal. July 6, 2007). To that end, "when a party asserts the deliberative process privilege, the privilege log mush show that (1) that the document is privileged and (2) the privilege cannot be overcome by the *Warner* factors." *Oceana, Inc.*, 2020 WL 2128853, at *5.

The County has failed to establish both points.

### 1. The County Has Not Established that the Memo is Privileged.

As an initial matter, the County has not satisfied the procedural requirements necessary for a government agency to invoke the deliberative process privilege. Namely, the deliberative

1    process privilege requires "(1) a formal claim of privilege by the head of the department having

2    control over the requested information; (2) assertion of the privilege based on actual personal

3    consideration by that official; (3) a detailed specification of the information for which the

4    privilege is claimed, with an explanation why it properly falls within the scope of the privilege;

5    and (4) a showing that the material for which the privilege is asserted has been kept

6    confidential." *Bernat v. City of California City,* No. 1:10-CV-00305, 2010 WL 4008361, at *4

7    (E.D. Cal. Oct. 12, 2010) (citation omitted); *see also Robinson v. Cty. of San Joaquin*, No. 2:12-

8    CV-2783 MCE GGH, 2014 WL 1922827, at *2 (E.D. Cal. May 14, 2014) (same); *Coleman v.*

9    *Schwarzenegger*, No. C01-1351 TEH, 2008 WL 2237046, at *4 (E.D. Cal. May 29, 2008)

10   (same).

11         The County's Updated Privilege Log indicates only that the Memo was drafted

12   "regarding Motion to Vacate Conviction of Darwin Crabtree." Exhibit 5 at 1. And the County's

13   October 19, 2020 Letter hardly offers any more details: only that the Memo "makes a suggestion

14   and recommendation for the District Attorney regarding how to oppose the Motion the Vacate."

15   Exhibit 7 at 3. This falls far short of the County's threshold obligation to show that the Taylor

16   Memorandum is privileged. *See Coleman*, 2008 WL 2237046, at *4.

17                    **2.    The County Cannot Overcome the *Warner* Factors**

18         In any event, even assuming that the County establishes that the Memo is privileged (it

19   has not), the *Warner* factors call for disclosure of the Memo.

20         The four (4) core *Warner* factors are: "(1) the relevance of the evidence sought to the

21   litigation; (2) the availability of comparable evidence from other sources; (3) the government's

22   role in the litigation; and (4) the extent to which disclosure would hinder frank and independent

23   discussion regarding contemplated policies and decisions." *Schwarzenegger*, 2007 WL 2009807,

24   at *5.

25         Here, each factor weighs heavily in favor of disclosure and overrides the County's

26   interest in nondisclosure.

i.   <u>The Memo is Highly-Relevant Evidence</u>

The County's Updated Privilege Log and October 19, 2020 Letter—though cursory—indicate that the Memo details the County's review and evaluation of its actions leading to Plaintiff's wrongful conviction. *See e.g.*, Exhibit 7 at 3 (stating that the memo includes a "review and recommendation" about Plaintiff's motion to vacate his criminal conviction). This representation is consistent with Matthew Taylor's disclosure to Plaintiff in January 2018 that he drafted and circulated a memo about Plaintiff's case as "cautionary tale," and it is further consistent with Matthew Taylor's indication that the Memo (i) details certain failures of the Butte County District Attorney's Office in prosecuting Plaintiff's criminal case, and (ii) ultimately led to the County of Butte conceding that Plaintiff's motion should be granted. *See* Crabtree Decl. ¶ 3.

Such evidence is highly-relevant to Plaintiff's allegations that (1) the County failed to adequately train Defendant McNelis, (2) Defendant Szendrey failed to adequately supervise Defendant McNelis, and (3) Defendant McNelis coerced allegations from Plaintiff's children, disregarded exculpatory evidence, and caused Plaintiff to be prosecuted with malice. *See Duenez v. City of Manteca,* No. 2:11-CV-1820 LKK AC, 2013 WL 684654, at *12 (E.D. Cal. Feb. 22, 2013) (rejecting government's invocation of deliberative process privilege in a §1983 case, holding that a document regarding "internal investigation of the [alleged wrongful conduct] is clearly relevant because it concern (sic) the specific incident listed in plaintiffs' complaint"); *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1027 (E.D. Cal. 2010), order clarified, No. 1:05–cv–01198–LJO–JMD–HC, 2010 WL 797019 (E.D. Cal. Mar. 5, 2010) (rejecting deliberative process privilege claim where at-issue documents directly spoke to the government's liability: "the manner in which [the County] exercised [its] authority in [Plaintiff's] particular case is the ultimate issue in this action"); *Cf. Soto v. City of Concord*, 162 F.R.D. 603, 612 (N.D. Cal. 1995) ("The "deliberative process" privilege . . . is also inappropriate for use in civil rights cases against police departments.")

1       The County's sole argument on the first *Warner* factor fails. The County claims that the

2  Taylor Memorandum is "not relevant towards the issues of this case" simply because it was

3  drafted "over 25 years" after Plaintiff's criminal prosecution. *See* Exhibit 7 at 4. This temporal

4  gap is meaningless. The contents of the Memo include—by the County's own admission—a

5  review and evaluation of its handling of Mr. Crabtree's criminal case. *See* Exhibit 5 at 1. Such

6  information speaks directly to Plaintiff's allegations, any way you slice it. *See Duenez v. City of*

7  *Manteca,* No. 2:11-CV-1820 LKK AC, 2013 WL 684654, at *12 (E.D. Cal. Feb. 22, 2013)

8  (rejecting government's deliberative process privilege claim in a §1983 suit on grounds of

9  relevance where plaintiff sought "all investigations, summaries, conclusions, and/or findings of

10  [the government agency] pertaining to the subject-incident").

11       The first *Warner* factor weighs in favor of disclosure.

12         ii.   There is No Similar Evidence to the Taylor Memorandum.

13       Next, the County's production to this point indicates that there is no similar evidence to

14  the Taylor Memorandum—a potentially candid assessment by the County of its own failures in

15  Plaintiff's prosecution—from any other source. *Desert Survivors v. US Dep't of the Interior*, 231

16  F. Supp. 3d 368, 384 (N.D. Cal. 2017) (second *Warner* factor tests the "availability of other

17  evidence with the same information") (citation omitted). The County hardly denies this. Instead,

18  it points to the "over 1,800 pages of relevant documents" it has produced so far, calling them

19  "relate[d] to the mental processes and conclusions reached" in the Memo. *See* Exhibit 7 at 4. But

20  that characterization of its own production is a stretch, at best. Defendants' production so far

21  largely consists of public filings and transcripts from Plaintiff's criminal proceedings. *See* Silver-

22  Korn Decl. ¶ 13. There is no "similar evidence" to the Memo. *Desert Survivors*, 231 F. Supp. 3d

23  at 384.

24       The second *Warner* factor weighs in favor of disclosure.

25         iii.   Plaintiff Alleges that the County Violated his Constitutional Rights

26

1    Perhaps most importantly, the County is a defendant in this case—alleged to have

2    violated Plaintiff's constitutional rights. *See Schwarzenegger*, 2007 WL 2009807, at *5 (third

3    *Warner* factor evaluated government's role in the litigation). Such circumstances weigh heavily

4    against application of the deliberative process privilege. *See, e.g.*, *Byrd v. Jossie*, No. CV 08–

5    3054–CL, 2008 WL 4274432 at *4, (D. Or. 2008) (rejecting deliberative process privilege where

6    "the government is a named defendant and its actions in handling Plaintiff's [case] are central to

7    the case"); *Agresta v. Goode*, No. 91–6396, 1993 WL 40306 at *2 (E.D. Pa. 1993) ("Where

8    discovery may shed light on government misconduct, as alleged here, a claim of predecisional

9    governmental privilege is typically denied."); *Schwarzenegger*, 2007 WL 2009807, at *7  (third

10   *Warner* factor favors plaintiff where "the role of the government in [the] litigation is

11   significant").

12   The third *Warner* factor weighs heavily in favor of disclosure.

13                iv.    Concerns about Hindering Frank Discussion Can be Mitigated

14   Finally, there is no reason to believe that disclosure of the Memo to Plaintiff would

15   uniquely hinder frank discussion among the County's employees—particularly given that the

16   Parties could simply enter into a protective order tailored to the Memo. *See Schwarzenegger*,

17   2007 WL 2009807, at *7 ("Because the government's concerns about hindering frank discussion

18   can be mitigated via a protective order or disclosure under seal, this factor does not weigh

19   heavily on the side of non-disclosure."); *Price v. County of San Diego*, 165 F.R.D. 614, 620

20   (S.D. Cal. 1996) ("The Court is convinced that the infringement upon the frank and independent

21   discussions regarding contemplated policies and decisions of the County . . . can be alleviated

22   through the use of a strict protective order against use or dissemination of the materials outside

23   of this lawsuit.").

24   While this factor may weigh slightly in favor of non-disclosure, it can be mitigated by a

25   protective order, and should not overcome the three (3) *Warner* factors weighing strongly in

26   favor of disclosure.

1

### E.      Plaintiff's Conclusion

2      The Taylor Memorandum is highly-relevant evidence. It is neither protected work

3 product nor protected from disclosure under the deliberative process privilege. It is discoverable.

4      Consequently, Plaintiff respectfully requests that the Court (i) review the Taylor

5 Memorandum *in camera*, (ii) grant Plaintiff's Motion, and (iii) order Defendant County of Butte

6 to produce the Taylor Memorandum immediately.

7 ## IV.     DEFENDANT'S CONTENTIONS

8      The sole issue in this discovery dispute is whether a memo prepared by Deputy District

9 Attorney Matthew Taylor regarding Mr. Crabtree's Motion to Vacate his criminal conviction is

10 protected and privileged or is discoverable. (Declaration of Matthew Taylor ¶ 2-3.) As discussed

11 below, the Taylor Memo contains Deputy District Attorney ("DDA") Matthew Taylor thoughts,

12 impressions, and conclusions regarding the Motion to Vacate based on Penal Code § 1473.7.

13 Plaintiff relies on the order obtained in that motion to bring the present civil rights case. The

14 Taylor memo represents the analysis and opinions of one person who had no involvement in the

15 Crabtree prosecution 26 years earlier and who wasn't employed at the DAs office until 2008.

16 DDA Taylor reviewed the motion and some of the historical record of the case and rendered an

17 assessment. His opinion and foundation are not relevant or material to Crabtree's factual

18 innocence or the justifications and motives in 1991 for defendants to investigate and prosecute

19 Crabtree. (*Id.*) The Defendants' are prepared and willing to present the Taylor Memo in camera

20 if the court wishes.

21 ### A.  Work Product

22      The work product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3), protects

23 "from discovery documents and tangible things prepared by a party or his representative in

24 anticipation of litigation." *Admiral Ins. Co. v. United States District Court*, 881 F.2d 1486, 1494

25 (9th Cir. 1989). To qualify for protection against discovery, "documents must have two

26 characteristics: (1) they must be prepared in anticipation of litigation or for trial, and (2) they must

be prepared by or for another party or by or for that other party's representative." *In re California Pub. Utils. Comm'n*, 892 F.2d 778, 780–81 (9th Cir. 1989).

The party seeking ordinary work product has the burden of demonstrating a substantial need for it, as well as an inability to obtain the information from other sources without undue hardship. *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981); *see also* Fed. R. Civ. P. 26(b)(3)(A)(ii); *Concord Boat Corp. v. Brunswick Corp.*, 1996 WL 705260 at *2 (N.D. Ill. 1996) ("the burden is on the party seeking discovery to establish that the information is sufficiently relevant and necessary to her case to outweigh the harm disclosure would cause to the person from whom she is seeking the information.")

Here, the Taylor memo is protected by qualified immunity under the work product doctrine and should not be disclosed.

### a.  The Taylor Memo was prepared during the PC 1437.7 Litigation and is protected from the current civil rights case which is related litigation

The work product doctrine requires "a subjective belief that litigation was a real possibility, and that belief must be objectively reasonable." *Lennar Mare Island*, 2014 WL 1366252, at *4. By contrast, the duty to preserve documents does not attach until litigation is "*probable*," which has been held to mean "*more than a possibility*." *In re Napster Copyright Litig.*, 462 F. Supp. 2d 1060, 1068 (N.D. Cal. 2006)(quoting *Hynix Semiconductor Inc. v. Rambus, Inc.*, 2006 U.S. Dist. LEXIS 30690, at *57 (N.D. Cal. 2006) (emphasis added)). Litigation is "probable" when an entity has received a threat of litigation—even through informal means such as text message or verbally. *See, e.g. In re Napster Litig.*, 462 F. Supp. 2d at 1069. Simply put, a party often reasonably *anticipates* the *possibility* of litigation (thus triggering work product protection) long before its adversary's statements and actions indicate that the anticipated litigation is in fact *probable* (thus triggering the duty to issue a litigation hold).

Here, the Taylor memo was prepared during the Penal Code Section 1473.7 litigation.[2] It was prepared in anticipation of a hearing on the motion and in that sense was prepared for trial of

---

[2] Plaintiff cites in his reply that *Doubleday v. Ruh,* 149 F.R.D. 601 (E.D. Cal. 1993) is applicable and that the County and DA's office are separate entities and therefore work-product doctrine is inapplicable. However,

the matter. Although the relief sought by the motion was to vacate the criminal conviction, this motion was a discreet piece of litigation and was not a part of the criminal case. The criminal case had long since concluded and Crabtree had already served his sentence. Crabtree had earlier sought unsuccessfully habeas corpus relief. Without this new statute, Crabtree had no legal avenue to have the conviction vacated. The new litigation, in the form of the motion to vacate the conviction, was only made possible by the enactment of PC 1473.7 in 2017. It is not disputed that the Taylor memo was prepared during the pendency of the PC 1473.7 litigation and is thus protected. It is likewise not disputed that the current civil rights litigation is closely related to the PC 1473.7 litigation in that the relief obtained – an order vacating the conviction – is an essential element of the current case. *FTC v. Grolier Inc.,* 462 U.S. 19, 25, fn 2 (1983) (adopting standard that work product doctrine is a qualified immunity which applies to related cases); see also "But the literal language of the Rule [26(b)(3)] protects materials prepared for any litigation or trial as long as they were prepared by or for a party to the subsequent litigation); *see also United States v. Pfizer, Inc.,* 560 F.2d 323, 355 (8th Cir.1977) (work product protection extends to all subsequent litigation), *but see Republic Gear Co. v. Borg-Warner Corp.,* 381 F.2d 551, 557 (2nd Cir.1967) (applies in subsequent litigation involving same transaction but different party). Courts have held that work product doctrine can extent to unrelated litigation, but it also certainly extends to related litigation similar to PC 1473.7 hearing here. Under *Heck v. Humphrey* 512 F.3d 555 (1994) a plaintiff may not seek relief until a criminal conviction is invalidated. No such opportunity existed for Mr. Crabtree in 2017 until the enactment of PC 1473.7 which allowed the motion to vacate. That proceeding and the relief Mr. Crabtree obtained is the very basis of his current civil rights case.

The Ninth Circuit has adopted the "because of" standard for determining whether a document was prepared in anticipation of litigation. *In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgt.*, 357 F.3d 900, 907 (9th Cir. 2004)(quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975)) Under this standard, a document is eligible for work product protection under Rule

---

*Doubleday* dealt with the disclosure of DA documents prepared during the criminal trial. Here, the Taylor Memo deals with the 1473.7 hearing and prepared 26 years after the conclusion of the criminal trial. *Doubleday* does not apply and is not controlling authority.

26(b)(3) if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." (*Id.*)  Here, the Taylor Memo was prepared in anticipation of the trial/hearing on the motion to vacate the conviction and there can be no dispute that it is protected in that matter even though it is concluded. The current civil rights case is related litigation to the PC 1473.7 litigation and the protection against disclosure extends to this matter as well.

b. **The Taylor Memo was prepared in response to the PC 1473.7 motion which, in part, challenged the conduct of County employees working at the DAs office, and the DA's Office and employees at the County share a common interest**

The second element of the work product doctrine – whether the Taylor memo was prepared by a "party or his representative" - is met through the common interest doctrine. This exception provides that disclosure to a third party does not waive work product protection where the third party shares  a common interest with  the  disclosing party that  is  adverse  to that  of the party seeking  the  discovery.  *See United  States  v.  Bergonzi,* 216  F.R.D.  487,  495–96 (N.D.Cal.2003);  *see McMorgan  &  Co.  v.  First  California  Mortg.  Co.,* 931  F.Supp.  703,  709 (N.D.Cal.1996) ("The  standard  for  waiver  of  work product protection  is  more  lenient  than  the standard  for  waiver  of  attorney-client  privilege  because  the  two  privileges  serve  different purposes.")

First, there is no evidence of "disclosure" to a third party. The County came into possession of the Taylor memo when it gathered documents from the DA's office when preparing initial disclosures and asked the DA to provide all documents related to the Crabtree matter.

In *U.S. v. American Tel. and Tel. Co.,* 642 F.2d 1285, 1299–1300 (D.C.Cir.1980) the court in that case specifically stated " 'common interests' should *not* be construed as narrowly limited to co-parties." *Id.* at 1299. Moreover, the court stated that when both the party giving the work product documents and the party receiving the documents have "a *common adversary* on the same issue" it weighs against finding a waiver of the privilege. *Id.* at 1299-1300. The court in that case upheld the claim of work product privilege, finding that MCI and the Government

had common interests because both were "proceeding on overlapping antitrust issues against a common adversary." *Id.* at 1300.

In *California Sportsfishing Protection Alliance v. Chico Scrap Metal Inc.,* 299 F.R.D. 638, 646-648 (E.D. Cal, 2014), the court determined that the California Sportfishing Protection Alliance and Butte County DA's Office had a common interest via the work product doctrine because both parties shared "a common interest in actively protecting water quality and public health" as well as other shared community interests in the law. The court ultimately held the "the common interest doctrine applies." (*Id.*)

Additionally, even if the Court determines there was a disclosure of the memo, the County and the DA, including Kristin McNelis, who was a DA employee and a target Defendant in this suit, held a common interest in complying with their discovery obligations They also had a common interest in the creation and content of the Taylor memo in that it addresses the merits of the motion to vacate the conviction and necessarily considers the conduct of County employees employed by the DAs office.   The DA and the County would have a common interest that Taylor's memo was a fair and objective review of the motion to vacate and relevant conduct of County employees employed by the DAs particularly under circumstances where, as here, the County would be charged with civil liability for such conduct.   The County and DAs office would similarly share a common interest that the Taylor memo be protected under the work product doctrine.

Furthermore, the District Attorney and the employees of the County have a common interest in the protection of the public of Butte County. Under the analysis in *California Sportsfishing Protection Alliance,* the employees at the County and the DA's Office share a common interest for the citizens of Butte County and the protection/prosecution of the law, including protecting the public health, welfare, and safety through the enforcement and protection of the laws in Butte County. Therefore, the Taylor Memo is protected under the work product doctrine.

**B. Opinion Work Product**

There are two kinds of work product: ordinary work product, which contains raw factual information,   and opinion work product,   which includes counsel's mental impressions, conclusions, opinions or legal theories. *See* Fed. R. Civ. P. 26(b)(3). While ordinary work product

is not discoverable unless the party seeking discovery shows a substantial need for the information and that the party cannot obtain the information by other means, opinion work product enjoys " 'almost absolute immunity and can be discovered only in very rare and extraordinary circumstances . . .' " *O'Connor v. Boeing North American, Inc.*, 216 F.R.D. 640, 642 (C.D. Cal. 2003) (quoting *Baker v. General Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000)); *Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 623 (N.D. Cal. 2005)(holding same); *In re Doe*, 662 F.2d 1073, 1079 (4th Cir. 1981) ("[W]hile the protection of opinion work product is not absolute, only extraordinary circumstances requiring disclosure permit piercing the work product doctrine. We acknowledge that the opinion work product rule should be jealously guarded....").

The Ninth Circuit explained in *Holmgren v. State Farm Mutual Automobile Insurance Co.*, 976 F.2d 573, 577 (9th Cir. 1992), to justify such a request, "[a] party seeking opinion work product must make a showing beyond the substantial need/undue hardship test required under Rule 26(b)(3) for non-opinion work product.... [O]pinion work product may be discovered and admitted when mental impressions are at issue in a case and the need for the material is compelling." Furthermore, opinion work product, including the mental impressions, conclusions, opinions, or legal theories of an attorney, is entitled to nearly absolute protection. *See Id.* at 577 (describing heavier burden to overcome opinion work product protection).

Here, the Taylor Memo is absolutely opinion work product and protected under the more stringent opinion work product doctrine because it contains Taylor's opinions regarding Plaintiff's Motion to Vacate under Penal Code Section 1473.7 as well as the Butte County District Attorney's mental impressions and conclusions about re-prosecuting Plaintiff's criminal case, likelihood of success, and internal impressions regarding documents at issue in this case. (Declaration of Matthew Taylor ¶ 2-3; Declaration of Michael L. Ramsey ¶ 2-5) It is not, as Plaintiff attempts to characterize it, a "cautionary tale" nor does it identify "red flags"—the memo merely evaluates whether the District Attorney's Office should pursue opposing the motion and indirectly considering whether a second trial would be reasonable for the alleged crimes. The decision to not

re-prosecute the case is not tantamount to an admission of liability nor is it even an admission that Plaintiff was factually innocent of his criminal conviction. Rather, it merely reflects that, based on the evidence currently available, the District Attorney's Office determined that it did not believe it could prove Plaintiff's alleged crimes beyond a reasonable doubt. (Declaration of Matthew Taylor ¶ 2-3; Declaration of Michael L. Ramsey ¶ 2-5) Even if the District Attorney's Office believed that Plaintiff was likely guilty of the crimes, if it concluded that it could not meet its burden to prove Plaintiff was guilty beyond a reasonable doubt with the evidence that is available today, it could, and did, conclude that the case should not be re-prosecuted. Further, the District Attorney's Office re-assessed the case with the hindsight assessment of what is known now about questioning of minors regarding allegations of sexual abuse. Much has changed since the early 1990s regarding how investigators should question children about sexual abuse allegations. Even if it were true that the District Attorney concluded that the investigator's questioning of Plaintiff's children was improper by today's standards, that does not mean that it was improper for its time. Thus, Taylor's opinions regarding whether the questioning was proper under today's standards is not relevant to the civil case.

Moreover, Taylor's opinions lack foundation in that he only considered limited information in authoring his memo. He did not speak with any of the Defendants in this case regarding their thoughts on the new material and information. (Declaration of Matthew Taylor ¶ 3) The failure to speak with Defendant Kristin McNelis/Simpson, the instrumental DA investigator in this case, makes Matthew Taylor's opinion incomplete and therefore not representative of the facts in this case.

Other than Taylor's impressions, the memo does not include any information that Plaintiff does not already have in his possession. The memo relied on documents already in Plaintiff's production including the original 1991 trial transcript, witness interviews with Mr. Crabtree's children, Mr. Crabtree's criminal history, notes in support of Mr. Crabtree, and diagnostic reports. The only

1  information contained in the memo that Plaintiff does not yet have are Taylor's opinions and

2  mental impressions which are protected under the more stringent opinion work product doctrine.

3       In sum, Plaintiff has not demonstrated a substantial need for the Taylor memo.

4  **C. Deliberative Process Privilege**

5       The deliberative process privilege permits a government agency to "to withhold documents [as

6  privileged] that reflect advisory opinions, recommendations and deliberations comprising part of

7  a process by which government decisions and policies are formulated." *FTC v. Warner Commc'ns*,

8  742 F.2d 1156, 1161 (9th Cir. 1984) (*per curiam*) (citation omitted); *see also Ctr. for Biological*

9  *Diversity v. U.S. Army Corps of Eng'rs*, No. 14-cv-1667 PSG, 2015 WL 3606419, at *3 (C.D. Cal.

10 Feb. 4, 2015) ("*CBD II*") (noting that the deliberative process privilege "shields from public

11 disclosure intra-governmental communications relating to matters of law or policy") (citations

12 omitted). To be withheld under the deliberative process privilege, the documents must be

13 "predecisional," *i.e.*, they "must have been generated before the adoption of an agency's policy or

14 decision." *Warner*, 742 F.2d at 1161(citation omitted); *see also Nat'l Wildlife Fed'n v. U.S. Forest*

15 *Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988) (noting that the documents must be "predecisional" or

16 "antecedent to the adoption of agency policy") (citation and internal quotation omitted). In

17 addition, the documents must be "deliberative," *i.e.*, "related to the process by which policies are

18 formulated.' " *Id.* (citation and internal quotation omitted); *see also Warner*, 742 F.2d at

19 1161 (noting that withheld documents "must be deliberative in nature, containing opinions,

20 recommendations, or advice about agency policies") (citation omitted).

21      The Defendant agrees the *Warner* factors applies and believes the factors in favor of Defendant

22 in establishing the deliberative process privilege applies. Furthermore, Butte County District

23 Attorney Michael L. Ramsey, the head of the District Attorney's Office, has reviewed the memo

24 and believes it is a privileged document. (Declaration of Michael L. Ramsey ¶ 2-5.)

25       **a.  The Taylor Memo is not Relevant or Material to this Case**

26

1    The first *Warner* factor considers the relevance of the evidence. The memo Plaintiff

2 requests was authored by Deputy District Attorney Matthew Taylor who conducted a review of

3 the evidence for/against Mr. Crabtree and prepared the memo evaluating whether to re-prosecute

4 Plaintiff. (Declaration of Matthew Taylor ¶ 2-3; Declaration of Michael L. Ramsey ¶ 2-5) The

5 memo is not relevant for the lawsuit. Internal deliberative documents shed no light on whether

6 Butte County is civilly liable because the musings, suggestions, criticisms, debate, and possible

7 changes in direction in these pre-decisional, deliberative documents become irrelevant once the

8 decision is actually made. *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

9    The D.C. Circuit, which sees the majority of challenges to agency decisions

10 involving deliberative process privilege, said in *Saratoga Development Corp. v. United States*,

11 21 F.3d 445, 457-58 (D.C. Cir. 1994) that subjective motivation of an agency decision-maker is

12 immaterial as a matter of law absent a showing of bad faith or improper behavior—which is not

13 present here. The Taylor memo reflects internal debate and discussion routine for the District

14 Attorney's Office.

15    Plaintiff argues the "contents of the Memo include—by the County's own admission—a

16 review and evaluation of its handling of Mr. Crabtree's criminal case" but fail to include the memo

17 was prepared for determination of whether the District Attorney could retry the criminal case based

18 on the new witness evidence in conjunction with the currently available documents. The memo is

19 not, as Plaintiff purports, a "review and evaluation" of the civil aspects for bringing a 42 USC §

20 1983 action or whether anyone from the District Attorney's Office or the Defendants' engaged in

21 potential malicious prosecution. As discussed above, in authoring the memo, Taylor reviewed the

22 original 1991 trial transcript, witness interviews with Mr. Crabtree's children, Mr. Crabtree's

23 criminal history, notes in support of Mr. Crabtree, and diagnostic reports—all of which have been

24 previously produced to Plaintiff. Taylor's impressions about whether to re-prosecute Plaintiff's

25 criminal case are not relevant or useful for the civil action. (Declaration of Matthew Taylor ¶ 2-3)

26 Taylor was not evaluating civil liability but whether the County could prove Plaintiff was guilty

1   beyond a reasonable doubt with the evidence currently available for Plaintiff's alleged crimes.

2   Taylor's conclusion that the County did not have sufficient evidence to re-prosecute Plaintiff has

3   no relevance to whether Defendants did anything improper or prosecuted Plaintiff with malice.

4   Moreover, Taylor's opinions lack foundation. He is not a forensic interviewer nor does he have

5   any specialized background in interviewing children who allegedly were the victims of sexual

6   abuse. Further, he only reviewed the trial transcript and interviews with the children, including

7   speaking with them, but he did not review Kristin Simpson/McNelis's training records, audio

8   recordings of the interview, or speak with any of the individual Defendants. (Declaration of

9   Matthew Taylor ¶ 2-3.) Without performing that investigative work, Taylor's opinions lack

10   foundation and have no evidentiary value as an admission. The Taylor memo is merely one

11   person's incomplete opinion about whether to re-prosecute Plaintiff's alleged crimes - it is not an

12   admission that any of the Defendants engaged in any wrongdoing that led to Plaintiff's conviction.

13       Finally, the District Attorney is absolutely immune for its decision whether to prosecute a

14   crime. (*Van de Kamp v. Goldstein,* 555 U.S. 335, 341 (2009).) Applying the same principles, the

15   internal memorandum discussing and examination the case of Mr. Crabtree should be afforded

16   similar protection and found to not only be irrelevant, but immaterial towards this civil action.

17       Therefore, the first *Warner* factor weighs in favor of nondisclosure for the Defendant.

18       **b. Similar Evidence has been Produced in this Case**

19       The second *Warner factor* requires the Court to determine the availability of other

20   evidence. Plaintiff argues that Defendants' over 1,800 pages of relevant documents are in fact, not

21   relevant or similar because they "largely consists of public filings and transcripts from Plaintiff's

22   criminal proceedings."  The Taylor memo consists of two types of information. First, it consists

23   of a summary of information and testimony related to Plaintiff's criminal conviction. (Declaration

24   of Matthew Taylor ¶ 2-3; Declaration of Michael L. Ramsey ¶ 2-5) All of that information has

25   already been produced to Plaintiff. Thus, Plaintiff does not need the memo to obtain any of the

26   underlying factual information related to the civil action. Second, the memo consists of Taylor's

mental impressions and analysis of the information related to Plaintiff's criminal conviction. (Declaration of Matthew Taylor ¶ 2-3; Declaration of Michael L. Ramsey ¶ 2-5.) These mental impressions are not relevant. As discussed in Section IV(C)(a) above, Taylor's opinions are incomplete, lack foundation, and not relevant for the civil case.

As such, the second factor weights in favor of the Defendants.

### c.   The District Attorney and County Counsel are Separate Entities

The third *Warner* factor considers the government's role in the litigation.  Although courts often find this factor weighs in favor of disclosure, this factor should carry less weight here, as the agency will always be a named party in deliberative process privilege disputes involving the government. *See, Center for Biological Diversity v. U.S. Army Corps of Engineers*, 2015 WL 3606419 (C.D. Cal. 2015). Indeed, the Ninth Circuit's discussion of this factor in *Warner*, the leading case in the Ninth Circuit, indicates that this factor requires evidence of bad faith on the part of the government. 742 F.2d at 1162 ("Although the [Commission's] memoranda take positions which conflict with the Commission's litigation position, the defendants have presented no evidence of bad faith or misconduct on the part of the Commission."); *Modesto*, 2007 WL 763370 at * 12 (*citing Warner*); *Coalition for a Sustainable Delta v. Koch*, 2009 WL 3378974 (E.D. Cal. 2009) at *9; *accord Callaway Community Hosp. v. Sullivan*, 1990 WL 125176 (W.D. Mo. 1990) at 6 (applying *Warner factors*).

Plaintiff's citation to *Byrd v. Jossie*, No. CV 08–3054–CL, 2008 WL 4274432 at *4, (D. Or. 2008) is inapposite in this matter because the district attorney [criminally'] and county [civilly] are separate government entities. The court in *Byrd* does not reflect a discussion regarding criminal and civil government wrongdoing. Here, there is no allegation or evidence of bad faith or misconduct. This factor therefore weighs in favor of nondisclosure.

### d.   Disclosure of the Taylor Memo would Hinder Frank Discussion in the District Attorney's Office

The fourth *Warner* factor considers the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. This factor weighs heavily in favor of privilege. Here, the memo requested was prepared by a Butte County Deputy

District Attorney who was making a recommendation and suggestion regarding the criminal prosecution of Plaintiff. If the County and/or District Attorney understood these types of communications to be potentially discoverable documents, the likelihood that attorneys will prepare such documents will be greatly diminished. For obvious reasons, attorneys will not author memos like the instant memo if they believed it could be discoverable in a future lawsuit where it would potentially be argued the memo exposes their employer to civil liability. The Ninth Circuit has explicitly recognized the reality that disclosure of such documents can have a chilling effect on frank discussions and deliberation within the government and could result in preparation of deliberative reports and recommendations that would draw conclusions sought by the agency decision-maker. (*Warner*, 742 F.2d at 116.) Because of the chilling effect on frank discussions and deliberations, this factor strongly favors nondisclosure. Here, Deputy District Attorneys must be allowed to freely express their comments, concerns, criticisms, suggestions and recommendations to their peers and supervisors without having those subject to public scrutiny.

In *Center for Biological Diversity*, the court discussed the effects of disclosure of such deliberative documents:

> If the agency officials involved in these discussions knew that all of their written comments would be subject to public scrutiny, they would not communicate as freely and openly. Operating in a "fishbowl," the agency officials might skirt around or sterilize their discussions of the more difficult or controversial issues, in order to avoid criticism if they later approve the [project]. Such self-censoring would certainly harm the quality of agency decision-making, thwarting the objective of the [deliberative process] privilege."

(*Center for Biological Diversity,* 2015 WL 3606419 at *7.)

This is also certainly true for discussions regarding criminal prosecution at the District Attorney's Office. Recognition of the chilling effect of disclosure of such documents is reflected in a number of cases that hold that agencies *are not even required to include deliberative process privilege documents in an administrative record* and invoke the privilege because such documents are considered privileged without more. *Portland Audubon Soc'y v. Endangered Species Comm.*, 984

F.2d 1534, 1549 (9th Cir. 1993); *Cook Intlekeeper v. U.S. E.P.A.*, 400 Fed.Appx. 239, 240 (9th Cir. 2010); *California v. U.S. Dept. of Labor*, 2014 WL 1665290 (E.D. Cal. 2014); *Norris & Hirshberg v. S.E.C.*, 163 F.2d 689, 693 (D.C. Cir. 1947) ("internal memoranda made during the decisional process ... are never included in a record").

Plaintiff's suggestion that a protective order would cure any chilling effect is false. Even if a protective order limited disclosure to the parties to this lawsuit, future attorneys would likely still be hesitant to author such memos if they understood the memos could become discoverable in a future lawsuit, even if only subject to a protective order. (Declaration of Michael L. Ramsey ¶ 2-5.)

The fourth *Warner* factor, as applied to the Taylor Memo, strongly favors nondisclosure.

**D. Protection Applies for Both the Work Product Doctrine and Deliberative Process Doctrine**

In *Starkey v. Birritteri* No. 12-10988-RWZ, 2013 WL 3984599 (D. Mass. 2013), the Court dealt with a very similar issue and found that "[i]f a district attorney's notes and testimony regarding his charging decisions and his trial strategy could be subpoenaed at will in subsequent litigation--particularly a malicious prosecution suit brought by a former defendant--the government's ability to prepare its case might be seriously impaired." No. 12-10988-RWZ, 2013 WL 3984599 at *1. The court went on to explain:

> [E]ven if [the plaintiff] had shown a substantial need to discover what the prosecutors thought, that need would still be outweighed by the opposing public interest. The decision whether to prosecute is the product of a deliberative process which should be afforded a high degree of protection from public inquiry. Considering both the deliberative process privilege and the policies behind the work product privilege, I find that the subpoena must be modified to exclude documents and testimony reflecting the [prosecutors'] thoughts or opinions about Starkey's prosecution, and to exclude materials created by the [prosecutors] in preparation for that case.

*Id*. at 2 (internal quotations and citations omitted) (favorably cited by *Kahn*, No. 13-24366-CIV, 2015 WL 4112081 at *5). The same public policy concern exists in this case. Allowing a former

defendant to gain access to privileged information simply by making groundless allegations of misconduct will dissuade attorneys from recording and retaining their mental impressions, conclusions, opinions, and legal theories for fear that these recordings could be appropriated, twisted, and used against the author and the County. Such a policy would seriously impair the prosecutors' ability to prepare and try cases.

Accordingly, because issues in the present litigation are similar to those in the criminal suit, disclosing memoranda from the criminal case would reveal the County Defendants' "strategy, intended lines of proof, evaluation of strengths and weaknesses, and inferences drawn from interviews." *Braun v. Agri-Sys.*, No. F-02-6482 A WILJO, 2006 WL 278592, at *5 (E.D. Cal. 2006) (citing *Hickman*, 329 U.S. at 511).

### E.  Defendant's Conclusion

Overall, the *Warner* factors as applied to the instant case strongly weigh in favor of non-disclosure. This Court should deny Plaintiff's motion.

## VI.  PLAINTIFF'S CONTENTIONS IN REPLY

### A.  Work Product Doctrine

#### 1.  The County Has No Authority to Invoke the Work-Product Doctrine

The County of Butte's contentions reveal that it has no grounds to invoke work-product protection for the Taylor Memo. It concedes that the memo—which was drafted by a deputy district attorney ahead of Plaintiff's criminal proceedings under Penal Code §1473.7—was neither prepared by the County nor for the County by its lawyers. *See e.g.*, Joint Statement at 18 ("The County came into possession of the Taylor memo when it gathered documents from the DAs office."). The County's concession makes good sense: in California, documents prepared by district attorneys in criminal litigation are (if anything) drafted on behalf of the People of California—not the county that employs the district attorneys. *See Shepherd v. Superior Court of Alameda County*, 17 Cal.3d 107, 122, 130 (1976) ("The district attorney is not an "attorney" who represents a "client" as such. He is a public officer, under the direct supervision of the Attorney General.") (overruled on other grounds); *see also Doubleday v. Ruh,* 149 F.R.D. 601, 606 (E.D.

Cal. 1993) ("It cannot be held that the District Attorney or the County of Sacramento is synonymous with the 'People.'").

The County's work-product claim fails on this basis alone. *See Doubleday* 149 F.R.D. at 605 ("In order for an entity to claim [work-product] immunity . . . it must have the right to claim the immunity in the first instance. In the particular circumstance of a previous criminal litigation and a subsequent civil litigation, the County [of Sacramento] is unable to assert the [work-product] privilege on its behalf . . . the deputy district attorneys are not 'its lawyers' in the criminal or civil proceedings."); *accord Sommer v. United States*, 2011 WL 4433631, at *5 (S.D. Cal. Sept. 22, 2011); *Colonies Partners LP v. Cty. of San Bernardino*, 2019 WL 2895187, at *9 (C.D. Cal. May 1, 2019); *Boyd v. City & Cty. of San Francisco*, 2006 WL 1141251, at *3 (N.D. Cal. May 1, 2006); *Bolus v. Carnicella*, 2020 WL 6531007, at *5 (M.D. Pa. Nov. 5, 2020); *Perrin v. Cty. of Riverside*, No. EDCV08595LLPSSX, 2010 WL 11556698, at *3 (C.D. Cal. Mar. 12, 2010).

### 2. The DA's Office Cannot Invoke the Work-Product Doctrine Here

In a similar vein, the former deputy district attorney and district attorney have no authority to invoke the work-product doctrine in this case. That's because work-product immunity can only be asserted "by a party (or a party's representative) to the litigation in which the immunity is asserted." *Doubleday*, 149 F.R.D. at 601 (citing *In Re California Public Utilities Com'n*, 892 F.2d 778, 781 (9th Cir.1989)); *see also Boyd v. City & Cty. of San Francisco*, No. C-04-5459 MMC (JCS), 2006 WL 1141251, at *4 (N.D. Cal. May 1, 2006) ("Here, as in *Doubleday*, the files at issue are prosecutorial files maintained by the District Attorney. The District Attorney is not a party to this litigation and therefore, the work product doctrine does not apply.").

### 3. It is Irrelevant Whether this Case is "Subsequent" Litigation To Plaintiff's Criminal Proceedings

Because the Taylor Memorandum was never protected work product in the first place, the County's argument that it *now* is protected work product because this civil case is purportedly

1   related or "subsequent" litigation to Plaintiff's criminal proceedings fails. Joint Statement at 17.

2   True enough, documents with work-product immunity in past litigation may be protected in

3   subsequent litigation—but those documents still must have been "prepared by or for a party *to*

4   *the subsequent litigation.*" *F.T.C. v. Grolier Inc.*, 462 U.S. 19, 103 (1983) (emphasis added).

5   Again: the Taylor Memo was not prepared by or for the County—or any other party in this

6   litigation. *See e.g.*, *Doubleday*, 149 F.R.D. at 605 ("The County cannot assert the work product

7   immunity because the work product was never prepared for it."); *Boyd*, 2006 WL 1141251, at *4

8   ("The District Attorney is not a party to this litigation and therefore, the work product doctrine

9   does not apply.").

10                  **4.    The Common Interest Doctrine Has No Application Here**

11          The County tries to skirt the fact that the Taylor Memorandum was never protected by

12   pointing to the common interest doctrine. *See* Joint Statement at 18 ("Whether the Taylor memo

13   was prepared by a 'party or his representative' - is met through the common interest doctrine.").

14   But that argument makes no sense. The common interest doctrine is an exception to a general

15   rule on waiver of work-product protection. *See California Sportfishing Prot. All. v. Chico Scrap*

16   *Metal, Inc.*, 299 F.R.D. 638, 645 (E.D. Cal. 2014) (holding that that common interest doctrine

17   "provides that disclosure to a third party does not waive work product protection where the third

18   party shares a common interest with the disclosing party"). The doctrine does not retroactively

19   create an attorney-client relationship between two parties (*e.g.*, a deputy district attorney and the

20   County) nor does it suddenly change the character of a document such that it becomes prepared

21   "by a party or his representative" (*e.g.*, the County) when it never was prepared by or for that

22   party (*e.g.*, the County) in the first place.

23          Indeed, the common interest doctrine "comes into play only if the communication at issue

24   is privileged in the first instance." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D.

25   Cal. 2007). Here, neither the County nor former Deputy District Attorney Matthew Taylor can

26   claim that the Taylor Memo is privileged work-product as it relates to this lawsuit. *See e.g.*,

1  *Doubleday* 149 F.R.D. at 606 ("The County cannot assert the work product immunity because

2  the work product was never prepared for it; the deputy district attorneys cannot assert the

3  immunity because they are not parties to the present litigation, nor are they 'representative of' a

4  party in this litigation for whom the work product was prepared.").

5     **5.    Whether the Taylor Memo Contains "Opinions" is of No Moment**

6        The County finally argues that the calculus somehow changes because the Taylor Memo

7  contains Matthew Taylor's "opinions and mental impressions" and therefore should be evaluated

8  "under the more stringent opinion work product doctrine." Joint Statement at 20. But the County

9  misses the point again. Because the Taylor Memo was never prepared by or for the County, it

10  makes no difference whether the Taylor Memo would hypothetically enjoy qualified or absolute

11  work product protection—the doctrine simply has no application here. *See Doubleday* 149

12  F.R.D. at 606 (holding that the fundamental principle that a "district attorney is not an 'attorney'

13  who represents a 'client' as such . . . is equally applicable to both facets of the work product

14  doctrine").

15        The County's work-product claim is improper and should be denied.

16     **B.    Deliberative Process Privilege**

17        Putting aside whether the County has satisfied its threshold obligation to show the Taylor

18  Memo is covered by the qualified deliberative process privilege,[3] the County's attempt to tilt the

19  *Warner* factors in favor of nondisclosure falls woefully short.

20     **1.    The Taylor Memo is Highly Relevant Evidence**

21        First, the County repeatedly doubles-down on the idea that the Taylor Memo is

22  categorically "not relevant" to this case. Joint Statement at 15, 21, 22, 23, 24. That just isn't

23

24  [3]     As of this Reply, Plaintiff has not seen or reviewed any documents by the County identifying "a formal
claim of privilege by the head of the department having control over the requested information; (2) assertion of the

25  privilege based on actual personal consideration by that official; (3) a detailed specification of the information for
which the privilege is claimed, with an explanation why it properly falls within the scope of the privilege; and (4) a

26  showing that the material for which the privilege is asserted has been kept confidential." *Bernat v. City of California
City*, No. 1:10-CV-00305, 2010 WL 4008361, at *4 (E.D. Cal. Oct. 12, 2010) (citation omitted)

1    credible. To begin, the County now all but concedes—for the first time—that the Taylor Memo

2    reviews and evaluates Defendant Kristin Simpson's interviewing tactics in the course of

3    Plaintiff's criminal case. *See id*. at 21 ("Even if it were true that the District Attorney concluded

4    that the investigator's questioning of Plaintiff's children was improper by today's standards, that

5    does not mean that it was improper for its time.").

6          Defendant Simpson's conduct—and specifically, her interrogation of Plaintiff's

7    children—is literally at the heart of this case. *See*, *e.g.*, Dkt. 1 ("Complaint") ¶ 13 ("Defendant

8    Simpson was not objective. Rather than attempt to uncover the truth, her interviews were

9    designed to shore up the children's stories and ensure Darwin's conviction."); ¶ 15 ("Despite

10   clear evidence of Darwin's innocence, Defendant Simpson was determined to build a case

11   against Darwin. By the end of Defendant Simpson's second interview with Joed, she had coaxed

12   Joed to make at least eight separate allegations of molestation."). Consequently, the information

13   in the Taylor Memo is highly relevant, and will likely steer Plaintiff toward other probative

14   documents and witnesses. *Smith v. Cty. of Los Angeles*, 2015 WL 13404047, at *3 (C.D. Cal.

15   Mar. 20, 2015) (compelling production of a district attorney's handwritten notes where "the facts

16   discussed go to the heart of the issues in the case at bar").

17         The County is free, of course, to now argue that Matthew Taylor—a nine-year veteran of

18   the District Attorney's Office, who was specifically tasked with evaluating Plaintiff's criminal

19   case—was ill-equipped for the job. *See* Joint Statement at 23 ("Taylor's opinions lack

20   foundation. He is not a forensic interviewer nor does he have any specialized background in

21   interviewing children who allegedly were the victims of sexual abuse."). But those arguments go

22   to the weight of the evidence—not whether the evidence is *relevant*.

23         Because there is little doubt that the Taylor Memo is directly relevant to Plaintiff's

24   allegations, the first *Warner* factor weighs strongly in favor of disclosure. *See Valley Surgical*

25   *Ctr. v. Cty. of Los Angeles*, 2017 WL 10574239, at *4 (C.D. Cal. Sept. 22, 2017) (rejecting claim

26

1  of deliberative privilege where "Plaintiff has made a showing that the documents may be

2  relevant to the main issues in its claims against the County and individual defendants").

3  ### 2.      No Similar Evidence Has Been Produced

4       The County next claims that the second *Warner* factor weighs in its favor of

5  nondisclosure because the Taylor Memo includes either (i) a summary of information and

6  testimony about Plaintiff's criminal conviction that has purportedly been produced, or (ii)

7  Taylor's opinions and mental impressions—which the County contends are irrelevant. *See* Joint

8  Statement at 24. But these arguments miss the mark. On the first point, any summary of factual

9  information and testimony in the Taylor Memo simply isn't privileged to begin with. *See Desert*

10  *Survivors v. U.S. Dep't of the Interior*, 231 F. Supp. 3d 368, 379 (N.D. Cal. 2017) ("The

11  privilege does not cover [p]urely factual material that does not reflect the deliberative process.")

12  (citations and internal quotation marks omitted). On the second point, the County does not try to

13  argue that *similar* information (*e.g.*, materials showing that District Attorney Office's opinions

14  and conclusions about Plaintiff's case) have been produced—only that such information is "not

15  relevant." Joint Statement at 24. But this (erroneous) argument speaks to the first *Warner* factor,

16  not the second.

17       Because there is no similar evidence as the Taylor Memo, the second *Warner* factor

18  favors disclosure.

19  ### 3.      The County's Alleged Misconduct is Central to this Case

20       The County tries to skirt the third *Warner* factor—the role of the government in the

21  litigation and whether the case implicates government misconduct—by distancing itself from the

22  District Attorney's Office and claiming (incredibly) that "there is no allegation or evidence of

23  bad faith or misconduct" against the County. Joint Statement at 25. In reality, Plaintiff alleges,

24  *inter alia*, that Defendant County of Butte (i) was responsible for the policies, practices, and

25  customs of the Butte County Alcohol and Drug Services and the Butte County District

26  Attorneys' Office, and that (ii) the County's deficient training policies caused Plaintiff's

1    wrongful conviction. *See* Dkt. 1 at ¶ 169-174. Accordingly, the County's role in this case,

2    coupled with Plaintiff's claims against it, calls for disclosure. *See Byrd v. Jossie,* No. CV 08-

3    3054-CL, 2008 WL 4274432, at *4 (D. Or. Sept. 17, 2008) (third factor weighs in favor of

4    disclosure where "the government is a named defendant and its actions in handling Plaintiff's

5    [case] is central to this case").

6    More fundamentally, by the County's all-but-admission, the Taylor Memo itself speaks

7    directly to the alleged government misconduct in this case. *See* Joint Statement at 21 ("Even if it

8    were true that the District Attorney concluded that the investigator's questioning of Plaintiff's

9    children was improper by today's standards . . ."). The third *Warner* factor therefore strongly

10   favor Plaintiff. *See Agresta v. Goode*, No. 91–6396, 1993 WL 40306 at *2 (E.D. Pa. 1993)

11   ("Where discovery may shed light on government misconduct, as alleged here, a claim of

12   predecisional governmental privilege is typically denied."); *Newport Pac. Inc. v. Cty. of San*

13   *Diego*, 200 F.R.D. 628, 640 (S.D. Cal. 2001) ("Because of the nature and the seriousness of the

14   allegations involved in this suit . . . [it is] the role of the government in the litigation itself that

15   tip[s] the scales in favor of disclosure.")

16              **4.      Disclosure of the Taylor Memo will not Chill Speech**

17   The County finally argues that disclosure of the Taylor Memo would hinder frank

18   discussion District Attorney's Office because "attorneys will not author memos like the instant

19   memo if they believed it could be discoverable in a future lawsuit where it would potentially be

20   argued the memo exposes their employer to civil liability." Joint Statement at 25.

21   This fear is overblown. To begin, the County has offered literally no evidence that

22   production of a single memo drafted about a single criminal proceeding would somehow chill

23   government speech. *See Newport Pac. Inc.*, 200 F.R.D. at 640 (rejecting application of

24   deliberative process privilege where, *inter alia*, "there has been no evidence presented" that

25   government speech would be chilled). Moreover, courts in this District evaluating the

26   deliberative process privilege have routinely pointed to disclosure of government documents as

1   actually having a *positive influence* on government agencies. *See Valley Surgical Ctr.*, 2017 WL

2   10574239, at *4 ("There is authority to the effect that subjecting members of a government

3   agency to public scrutiny may be useful in encouraging frank and honest internal

4   communications."); *Marilley v. McCamman*, 2012 WL 4120633, at *6 (N.D. Cal. Sept. 19, 2012)

5   ("The court is not convinced that communications in the future are likely to be chilled, and

6   moreover, if because of this case, members of government agencies acting on behalf of the

7   public at large are reminded that they are subject to scrutiny, a useful purpose will have been

8   served."); *Acad. of Our Lady of Peace v. City of San Diego*, 2011 WL 6826636, at *8 (S.D. Cal.

9   Dec. 28, 2011) (same); *Newport Pac. Inc*, 200 at 640 (same); *N. Pacifica, LLC v. City of*

10  *Pacifica*, 274 F. Supp. 2d 1118, 1125 (N.D. Cal. 2003) (same).

11          In any event, to the extent the County is concerned about the chilling effect disclosure of

12  the Taylor Memo might have, a protective order would mitigate this concern. *See Price v.*

13  *County of San Diego*, 165 F.R.D. 614, 620 (S.D. Cal. 1996) (ordering production of documents

14  because, *inter alia*, "the infringement upon the frank and independent discussions regarding

15  contemplated policies and decisions by the County . . . can be alleviated through the use of a

16  strict protective order"); *Marilley*, 2012 WL 4120633, at *6 (same)*; L.H. v. Schwarzenegger*, No.

17  S-06-2042 LJJGGH, 2007 WL 2009807, at *5 (E.D. Cal. July 6, 2007) (same).

18          Ultimately, the *Warner* factors call for disclosure of the Taylor Memo and the Court

19  should reject the County's deliberative process privilege claim.

20      **C.    Plaintiff's Conclusion in Reply**

21          Plaintiff respectfully requests that the Court (i) order Defendant to produce the Taylor

22  Memorandum for the Court's *in camera* review prior to the December 10, 2020 hearing, (ii)

23  grant Plaintiff's Motion, and (iii) order Defendant County of Butte to produce the Taylor Memo

24  immediately.

25

26

1

2   Dated: December 3, 2020                    Respectfully submitted,

3
                                              By: /s/ Brandt Silver-Korn
4                                             Rafey S. Balabanian
                                              rbalabanian@edelson.com
5                                             Todd Logan
                                              tlogan@edelson.com
6                                             Brandt Silver-Korn
                                              bsilverkorn@edelson.com
7                                             EDELSON PC
                                              123 Townsend Street, Suite 100
8                                             San Francisco, California 94107
                                              Tel: 415.212.9300 / Fax: 415.373.9435
9
                                              *Attorneys for Plaintiff*
10
                                              By: /s/ Matthew W. Gross (as authorized on
11                                            12/3/2020)
                                              Stephen E. Horan, SBN 125241
12                                            William E. Camy, SBN 291397
                                              Matthew W. Gross, SBN 324007
13                                            PORTER SCOTT
                                              A PROFESSIONAL CORPORATION
14                                            350 University Avenue, Suite 200
                                              Sacramento, California 95825
15
16                                            TEL: 916.929.1481
                                              FAX: 916.927.3706
17

18                                            *Attorneys for Defendants*

19

20

21

22

23

24

25

26