UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DARWIN CRABTREE,

          Plaintiff,

    v.

COUNTY OF BUTTE, et al.,

          Defendants.

No.  2:20–cv–0675–KJM–KJN

<u>ORDER ON MOTION TO COMPEL</u>

(ECF No. 39)

Presently before the court[1] is plaintiff Darwin Crabtree's motion to compel the production of a memo withheld by defendant County of Butte ("the County") on the grounds that the document is protected from disclosure by the work product doctrine, the deliberative process privilege, or both.  (ECF No. 39.)  The parties previously filed a joint statement regarding the discovery disagreement (ECF No. 41), and the court independently reviewed the memo in-camera.  The court heard remote arguments on the motion on December 10, 2020.  (ECF No. 43.)  Brandt Silver-Korn appeared for plaintiff; and Stephen Horan and Matthew Gross appeared for defendant the County of Butte.  For the following reasons, the court GRANTS IN PART and DENIES IN PART plaintiff's motion.

///

---

[1] This matter was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(1) and 28 U.S.C. § 636(b)(1).

1    **BACKGROUND**

2         **A.  The Underlying Action**

3         This discovery dispute arises in plaintiff's 42 U.S.C. § 1983 action seeking to hold the

4    County, and certain County employees, civilly liable for the conduct and policies that led to his

5    wrongful conviction.  In 1991, plaintiff was convicted in California state court of several counts

6    of sexually abusing two of his sons.  (ECF No. 1 at 2, 23.)  The Butte County District Attorney's

7    Office ("the DA's Office") led the prosecution, allegedly based on false accusations plaintiff's 7-

8    and 12-year-old sons were coerced into making by an unlicensed County family therapist and a

9    DA's office child abuse investigator.  (<u>Id.</u> at 2, 10-11, 15.)  Plaintiff was sentenced to 24 years in

10   prison (suspended to 16 years) and served 9 years before being granted parole in 2001.  (<u>Id.</u> at 7,

11   24-25.)

12        In 2008, plaintiff's sons voluntarily recanted, and in 2017—with the help of the Northern

13   California Innocence Project—plaintiff moved to vacate his convictions under California Penal

14   Code § 1473.7(a)(2), citing the recantations as newly discovered evidence of his actual

15   innocence.[2]  (<u>Id.</u> at 8, 25-27.)  On January 17, 2018, noting the DA's Office had conceded the

16   motion, the state court granted the motion without findings and vacated plaintiff's convictions.

17   (<u>Id.</u> at 8, 27; ECF No. 1.15.)  Plaintiff alleges that "[p]rior to the Court's ruling, the [DA's] Office

18   conceded that [plaintiff's] conviction should be vacated and apologized for their fundamental role

19   in his conviction."  (ECF No. 1 at 8.)

20        In December 2019, plaintiff filed this action against the therapist, the investigator, their

21   supervisors, and the County.  (<u>Id.</u> at 1-2, 9.)  As relevant to this dispute, plaintiff asserts several

22   § 1983 causes of action:  (1) a malicious prosecution claim against the therapist and the

23   ─────────────────

24   [2] Penal Code § 1473.7, which went into effect on January 1, 2017, provides in relevant part:

25             (a) A person who is no longer in criminal custody may file a motion
               to vacate a conviction or sentence for either of the following reasons:

26             . . .

27                  (2) Newly discovered evidence of actual innocence exists that
                    requires vacation of the conviction or sentence as a matter of law
28                  or in the interests of justice.

1    investigator, (2) a supervisory liability claim against their supervisors for failure to train and

2    failure to supervise, and (3) a <u>Monell</u> claim against the County for the deficient policies,

3    practices, and customs of its Alcohol and Drug Services department (where the therapist worked)

4    and the DA's Office (where the investigator worked) that led to plaintiff's constitutional

5    deprivations.  (<u>Id.</u> at 29-36.)  For the malicious prosecution claim against the County therapist,

6    plaintiff alleges that the therapist used coercive and suggestive techniques to ask the children

7    about being abused by plaintiff, reported the supposed abuse to Butte County Child Protective

8    Services, and knowingly made false statements about him to the police, prosecutors, and the state

9    court.  (<u>Id.</u> at 12-14, 29.)  For the malicious prosecution claim against the DA's Office

10   investigator, plaintiff alleges that the investigator coerced plaintiff's children into making false

11   accusations against him that led to his prosecution, and fabricated evidence submitted to the court

12   that contributed to his harsh sentencing.  (<u>Id.</u> at 16-22, 29.)

13        **B.  The Discovery Dispute**

14        The present discovery dispute arises over a 12-page memorandum authored on June 22,

15   2017, by then-County Deputy District Attorney Matthew Taylor regarding plaintiff's then-

16   pending motion to vacate his convictions ("the Taylor Memo" or "Memo").  (ECF No. 41 at 3.)

17   The Memo was sent to County District Attorney Michael Ramsey, who has submitted a

18   declaration stating that "[t]he Memorandum was prepared for the purposes of determining

19   whether the District Attorney's Office should oppose Mr. Crabtree's Motion to Vacate."  (ECF

20   No. 41.10 at 2.)  Former DDA Taylor also submitted a declaration averring that he joined the

21   DA's Office in 2011 and was not involved in plaintiff's criminal prosecution; but in September

22   2017 he was assigned by a Senior Deputy District Attorney to review plaintiff's motion to vacate.

23   (ECF No. 41.11 at 2.)  According to Taylor, the Memo's purpose "was solely to analyze whether

24   the [DA's] Office should oppose the Motion to Vacate and indirectly related to whether the

25   [DA's] Office would have success if the Motion to Vacate was successful and the District

26   Attorney chose to prosecute the case."  (<u>Id.</u>)

27        Plaintiff learned of the Memo's likely existence after a January 2018 press conference the

28   DA's Office held announcing his exoneration when DDA Taylor expressed to him that plaintiff's

1  case had "such an impact" on the DA's Office that a memo was circulated as a "cautionary tale."

2  (ECF No. 41.1 at 2.)  In July 2020, plaintiff served document production requests on the County,

3  including a request for documents sent or authored by DDA Taylor related to plaintiff.  (ECF

4  No. 41 at 5.)  With its amended responses, the County provided a privilege log indicating that it

5  was withholding (among other documents) the Taylor Memo based on the work product doctrine

6  and deliberative process privilege.  (Id. at 6.)  Although the County revised its privilege log to add

7  slightly greater description of the Memo, it maintained its work product and deliberative process

8  claims throughout the parties' written communications and meet and confer attempt, prompting

9  this motion.

10  Plaintiff believes the Memo details certain failures of the DA's Office in prosecuting his

11  criminal case and led the DA's Office to concede the motion to vacate.  (ECF Nos. 41 at 3-4, 41.1

12  at 2.)  Plaintiff characterizes the 2017 Memo as "a smoking gun" showing that the defendants

13  violated his constitutional rights in the 1991 prosecution, and as such he believes the Memo could

14  be "a central—if not dispositive—document" in his case.  (ECF No. 41 at 4-5.)  The County

15  responds that the Memo contains the analysis and opinions of one person with no involvement in

16  plaintiff's prosecution 26 years earlier and is thus irrelevant to the present litigation.  (Id. at 15.)

17  At plaintiff's request, and with the County's expressed willingness (id. at 15, 35), the

18  court ordered a copy of the Taylor Memo produced to the court for in camera review.  Having

19  thoroughly inspected the Memo in camera, the court turns to the County's work product and

20  deliberative process claims.

21  **DISCUSSION**

22  **A. Work Product Protection**

23  "The work product doctrine is not a privilege but a qualified immunity that protects

24  documents and tangible things from being disclosed during discovery that have been prepared by

25  a party or his representative in anticipation of litigation."  Anderson v. Marsh, 312 F.R.D. 584,

26  592 (E.D. Cal. 2015); see In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.), 357 F.3d

27  900, 906 (9th Cir. 2004) (citing Fed. R. Civ. P. 26(b)(3)).  However, by rule, such protection only

28  extends to (1) "documents and tangible things" (2) "prepared in anticipation of litigation or for

4

trial" (3) "by or for another party or its representative."  Fed. R. Civ. P. 26(b)(3).  "The party asserting the work product privilege bears the burden of proving that the material withheld meets the standards established for material to be classified as work product."  <u>Garcia v. City of El Centro</u>, 214 F.R.D. 587, 591 (S.D. Cal. 2003).  The County has not done so here, primarily because it has not shown that the Taylor Memo was prepared "by or for another party or its representative."[3]

It is undisputed that the Memo was authored by Deputy District Attorney Taylor for District Attorney Ramsey.  (ECF No. 41 at 3.)  Neither of them is a named party to this litigation, and neither was acting as a representative of the County (or any other current defendant) in drafting or reviewing the Memo.[4]  (<u>Id.</u> at 18 (County stating that it came into possession of the Taylor Memo "when it gathered documents from the DA's office when preparing initial disclosures" for this case)); <u>see</u> <u>Shepherd v. Superior Court</u>, 17 Cal. 3d 107, 122, 130 (1976) ("The district attorney is not an 'attorney' who represents a 'client' as such.  He is a public officer, under the direct supervision of the Attorney General."), <u>overruled on other grounds by</u> <u>People v. Holloway</u>, 33 Cal. 4th 96 (2004); <u>Doubleday v. Ruh</u>, 149 F.R.D. 601, 605-07 (E.D. Cal. 1993).[5]

Seeming to acknowledge this gap, the County argues that this authorship element is nevertheless "met through the common interest doctrine."  (ECF No. 41 at 18.)  As defendant correctly explains, "[t]his <u>exception</u> provides that disclosure to a third party does not <u>waive</u> work product protection where the third party shares a common interest with the disclosing party that is

---

[3] For the reasons discussed at the hearing, the court also concludes that the Memo was not prepared in anticipation of litigation.

[4] Although work-product protection can be applied to protect material from disclosure in a subsequent suit, the key requirement remains that the protected materials must have been "prepared by or for a party to the subsequent litigation."  <u>F.T.C. v. Grolier Inc.</u>, 462 U.S. 19, 25 (1983).

[5] The County argues briefly in a footnote that <u>Doubleday</u> does not apply because that case addressed the disclosure of prosecutors' documents prepared during the prior criminal trial, whereas the Taylor Memo was created long after Mr. Crabtree's trial.  This is a distinction without a difference.  The reasoning of <u>Doubleday</u> applies equally in concluding that the Taylor Memo was not drafted by or for the County or any other party to this action.

1   adverse to that of the party seeking the discovery.  (Id. (emphasis added), citing United States v.

2   Bergonzi, 216 F.R.D. 487, 495–96 (N.D. Cal. 2003); McMorgan & Co. v. First California Mortg.

3   Co., 931 F. Supp. 703, 709 (N.D. Cal. 1996).)

4        By defendant's own description, the common interest doctrine applies in circumstances

5   totally absent from this case.  Plaintiff here has made no claim of waiver through third-party

6   disclosure such that the common interest doctrine might come into play as an exception to the

7   general waiver rule.  Defendant cites no case supporting the use of the common interest doctrine

8   to impute one entity's authorship of a given work product to another separate entity.  The fact that

9   the DA's Office and the County share many common interests in relation to this case brings

10  defendant no closer to showing that the County or its representative authored the Taylor Memo.

11       The County advances no alternative argument for how the authorship element of the work

12  product doctrine is satisfied for the Memo.  Accordingly, the court overrules the County's work-

13  product objection.

14       **B. Deliberative Process Privilege**

15       The deliberative process privilege, which is qualified, is intended to protect the quality of

16  agency decisions by promoting frank and independent discussion among those responsible for

17  governmental decision-making.  See, e.g., F.T.C. v. Warner Commc'ns Inc., 742 F.2d 1156, 1161

18  (9th Cir. 1984); Carter v. U.S. Dep't of Commerce, 307 F.3d 1084, 1089 (9th Cir. 2002) ("The

19  purpose of this privilege is to allow agencies freely to explore possibilities, engage in internal

20  debates, or play devil's advocate without fear of public scrutiny." (internal quotation omitted)).  If

21  a document is both "predecisional" and "deliberative" in nature, the privilege applies.  Warner,

22  742 F.2d at 1161.  Purely factual matter is not deliberative, but the privilege applies if the factual

23  matter cannot be segregated from the deliberative material within the document.  Id.

24       As a qualified privilege, a litigant may still obtain discovery of materials protected by the

25  privilege if the need for the materials outweighs the governmental interest in keeping the

26  decision-making process confidential.  In deciding whether to override the privilege and allow

27  discovery, there are four factors to be considered:  "1) the relevance of the evidence; 2) the

28  availability of other evidence; 3) the government's role in the litigation; and 4) the extent to

1   which disclosure would hinder frank and independent discussion regarding contemplated policies

2   and decisions."  Karnoski v. Trump, 926 F.3d 1180, 1206 (9th Cir. 2019) (per curiam) (quoting

3   Warner, 742 F.2d at 1161).  Plaintiff does not dispute that the privilege applies to at least some

4   portion of the Taylor Memo,[6] but plaintiff argues that under the Warner factors his need for the

5   Memo overrides the County's interest in non-disclosure.  (ECF No. 41 at 11.)

6       *1.  Relevance*

7           Plaintiff contends that the Taylor Memo is highly relevant, believing that it details "the

8   County's review and evaluation of its actions leading to Plaintiff's wrongful conviction," or as "a

9   review and evaluation of its handling of Mr. Crabtree's criminal case."  (ECF No. 41 at 12, 13.)

10   Plaintiff likens his request for this Memo to requests in other cases for internal investigation

11   documents concerning the incidents at issue in those suits.  (Id.)  Plaintiff is correct that courts in

12   this district have often overruled deliberative process objections asserted for documents created as

13   part of an internal affairs investigation of the challenged incident—most typically police

14   department investigations of alleged officer misconduct.  See Mayfield v. Cty. of Los Angeles,

15   No. 2:19-CV-1298-FMO-SKX, 2020 WL 2510649, at *1 (C.D. Cal. Mar. 20, 2020) (collecting

16   cases and rejecting privilege claim for documents related to County's internal investigation of

17   alleged misconduct by County employee).  Their rationale for rejecting the privilege is that

18   communications regarding such internal affairs investigations "are not designed to contribute to

19   the formulation of important public policy and are routinely generated."  Id. (quoting Swartwood

20   v. Cty. of San Diego, No. 12CV1665-W BGS, 2013 WL 6670545, at *3 (S.D. Cal. Dec. 18,

21   2013); see Duenez v. City of Manteca, No. 2:11-CV-1820 LKK AC, 2013 WL 684654, at *12

22   (E.D. Cal. Feb. 22, 2013) ("Defendant cites to no controlling authority applying the deliberative

23   process privilege to the [internal investigative] documents sought by way of this RFP in the

24   context of a civil rights case.").

25           The court does not find this backdrop persuasive in assessing the relevance of the Taylor

26

---

27   [6] Although plaintiff at first maintained that the County did not adequately assert the privilege, as a
procedural matter, plaintiff confirmed at the hearing that DA Ramsey's declaration attached to the
28   parties' joint statement sufficiently invokes the privilege.  (ECF Nos. 41 at 10-11, 41.10.)

Memo, however, because it is not the same sort of investigative document routinely generated in relatively soon after the event in question.  Cf. Anderson v. Marsh, 312 F.R.D. 584, 593 (E.D. Cal. 2015) (noting in the context of a work-product analysis that police department internal investigations are routinely created, and their purpose "is to determine if the officer was legally justified in shooting, complied with departmental policy, and if any action should be taken by the immediate supervisor").

After thorough in camera review, the court can confidently say that the sole reason for the Memo's creation was to decide whether the DA's Office would oppose plaintiff's motion to vacate his conviction.  The Memo definitively does not read as an internal investigation into the way the case was handled some 26 years prior.  Ironically, a portion of the Memo (which the County does not object to disclosing) falls under a heading entitled "Internal Investigation," but that section simply chronicles DDA Taylor's contemporaneous conversations with Mr. Crabtree, his sons, and his ex-wife to assess the strength of the case in light of the new evidence.  (Memo at 7-9.)  The portions of the Memo that the County remains unwilling to disclose contain DDA Taylor's opinion of whether—in light of the recantations—there was enough evidence to vacate the conviction under Penal Code § 1473.7, and thus necessarily (and unsurprisingly) include discussion of the now-apparent weaknesses in the prosecution's original case, with the advantage of hindsight and a somewhat improved understanding of questioning minors about sensitive subjects.  But none of those opinions and analysis shed light on whether the County in the 1990s was aware of, or deliberately indifferent to, unconstitutional practices of its employees; or whether by the standards of the day, the therapist's and investigator's techniques were coercive.  They are simply one attorney's views of the evidence underlying the conviction, offered in the context of assessing whether to defend that conviction decades later.  The deliberative portions of the Taylor Memo thus are not relevant to plaintiff's present suit, and this factor weighs against ordering its full disclosure.

### 2.  *Availability of Other Evidence*

Plaintiff argues that there is no evidence from any other source similar to the Taylor Memo, that is "a potentially candid assessment by the County of its own failures in Plaintiff's

8

prosecution." (ECF No. 41 at 13.) For the reasons just discussed, this statement would carry more force if the Taylor Memo had been drafted by or for the County shortly after the prosecution occurred. As it stands, it is one attorney's view of how the evidence supporting plaintiff's conviction has weathered over several decades. As a practical matter, the court sees no reason that plaintiff could not today obtain another person's—even another criminal attorney's—opinion of the same documentary evidence DDA Taylor reviewed (evidence that the County has already produced to plaintiff), and offer his or her views on how the techniques used to obtain the children's accusations do or do not satisfy today's standards for questioning minors. The fact that DDA Taylor was a County employee at the time he authored the Memo does not make his opinion more probative than an outside expert's view, which would also be offered from the vantage of many decades post-prosecution. Accordingly, the court also weighs this factor against ordering the Memo's full disclosure.

### 3. Government's Role in the Litigation

Often, "[t]he fact that a governmental entity's action is the focal point of litigation weighs against upholding the deliberative process privilege." Thomas v. Cate, 715 F. Supp. 2d 1012, 1028 (E.D. Cal. 2010) (collecting cases), order clarified, No. 1:05-CV-01198-LJO-JMD-HC, 2010 WL 797019 (E.D. Cal. Mar. 5, 2010). Indeed, in a notable recent case, the Ninth Circuit concluded without discussion that this third factor favored disclosure where "the government—the Executive—is a party to and the focus of the litigation." Karnoski, 926 F.3d at 1206 (vacating discovery order to produce documents concerning the President's and Secretary of Defense's deliberations over new policy banning transgender individuals from military service).

Here, the policies of Butte County and the conduct of certain of its employees are certainly the focus of this suit. But cases like this one—where the deliberative document sought was neither prepared by the defendant government entity, nor prepared in aid of the policies being challenged in the suit—require a more nuanced approach to this factor. The government's role in the litigation is an important factor because the deliberative process privilege "was fashioned in cases where the governmental decisionmaking process is collateral to the plaintiff's suit." See In re Subpoena Duces Tecum Served on Office of Comptroller of Currency, 145 F.3d 1422, 1424

1   (D.C. Cir. 1998) (citing as examples cases where "shareholders sought Comptroller's bank

2   examination reports to prove fraud charges against corporation" and where a "petitioner wanted

3   deliberative materials to establish a defense to an unfair labor practice charge").   In cases where a

4   plaintiff is seeking a deliberative document prepared by or for the defendant government entity in

5   aid of the challenged decision, the decisionmaking process is necessarily central to the suit, and it

6   makes good sense that this factor weighs in favor of disclosure.   See, e.g., Karnoski, 926 F.3d at

7   1206; Thomas v. Cate, No. 1:05-CV-01198-LJO-JMD-HC, 2010 WL 797019, at *2 (E.D. Cal.

8   Mar. 5, 2010) (upholding deliberative process privilege where "the Governor's decision-making

9   process [was] at issue" and "[t]he Governor [was] responsible for the alleged violation of

10  Petitioner's constitutional right"); Byrd v. Jossie, No. CV 08-3054-CL, 2008 WL 4274432, at *4

11  (D. Or. Sept. 17, 2008) (in rejecting privilege claim in Administrative Procedure Act case against

12  agency, noting without further analysis that government was a party to the action).

13  But in this case, plaintiff's suit does not allege any impropriety in the District Attorney's

14  2017–2018 decision not to oppose plaintiff's motion to vacate his conviction—the decision in aid

15  of which the Taylor Memo was created.   Rather, plaintiff is suing over the conduct and policies of

16  Butte County and its officials in the early 1990s.   The DA's decision not to oppose the motion to

17  vacate is not exactly "collateral" to plaintiff's suit, because plaintiff is still suing the County for

18  its employees' conduct addressed (at least to some degree) in the Taylor Memo; but nor is the

19  DA's non-opposition decision in any way central to plaintiff's suit, since neither the non-

20  opposition decision nor the Taylor Memo could have contributed to setting the County's 1990s

21  policies or practices regarding counseling or investigation techniques.   Accordingly, the court

22  finds this factor neutral.

23  ### 4.   Chilling Effect of Disclosure

24  This final factor manifests one of the main purposes of the privilege: "to allow agencies

25  freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of

26  public scrutiny."   Carter, 307 F.3d at 1089; see Coastal States Gas Corp. v. Dep't of Energy, 617

27  F.2d 854, 866 (D.C. Cir. 1980) (the deliberative process privilege "serves to assure that

28  subordinates within an agency will feel free to provide the decisionmaker with their uninhibited

1   opinions and recommendations without fear of later being subject to public ridicule or criticism").

2       The court concludes that this factor weighs heavily against disclosure of the Taylor

3   Memo, as disclosure—even under a protective order—would necessarily reduce the quality of the

4   DA's Office's decisions.  See Warner, 742 F.2d at 1161 ("The ultimate purpose of the privilege is

5   to protect the quality of agency decisions."); see also Dep't of Interior v. Klamath Water Users

6   Protective Ass'n, 532 U.S. 1, 8-9 (2001) ("The deliberative process privilege rests on the obvious

7   realization that officials will not communicate candidly among themselves if each remark is a

8   potential item of discovery and front page news, and its object is to enhance the quality of agency

9   decisions, by protecting open and frank discussion among those who make them within the

10  Government." (internal quotation marks and citations omitted)).

11      In camera review reveals that the Taylor Memo is almost exclusively devoted to the

12  question of whether to oppose Mr. Crabtree's motion to vacate.  Answering such a question

13  necessarily requires a frank and candid assessment of the evidence on-hand when the case was

14  prosecuted and the newly discovered evidence (i.e., plaintiff's son's recantations)—as well as a

15  recommendation of whether the County would be justified in opposing the motion.  Disclosure of

16  an internal memo like this one results in a very high, if not the highest, degree of intrusion into a

17  government agency's deliberations.  See L.H. v. Schwarzenegger, No. S-06-2042 LKK/GGH,

18  2007 WL 2009807, at *7 n.12 (E.D. Cal. July 6, 2007) (contrasting production of agency budget

19  requests which "intrude[] minimally" with production of "internal emails[] and memoranda"

20  which "may result in far greater intrusion").  In Warner itself, where the memoranda at issue

21  contained "[a]nalyses and recommendations [that] play a critical role in the Commission's

22  decision whether or not to challenge a merger," the Ninth Circuit held that the memoranda "go to

23  the heart of the deliberative and policy-making processes" and their compelled disclosure "almost

24  certainly injures the quality of agency decisions."  742 F.2d at 1161-62 ("It chills frank discussion

25  and deliberation in the future among those responsible for making governmental decisions.")

26      So too with the Taylor Memo.  Its analysis and recommendation on how to respond to the

27  vacatur motion played a critical role in the DA's decision whether to challenge the motion.

28  District attorney's offices must make such prosecutorial decisions day-in and day-out, and it is in

the public's best interest to allow line attorneys to voice their views on such matters openly and honestly to their superiors, without fear that putting pen to paper will expose them or their office to future embarrassment or liability.  Cf. Coastal States, 617 F.2d at 869 (finding no chilling effect where the "documents do not contain subjective, personal thoughts on a subject, so public knowledge of the documents will not subject the writer either to ridicule or criticism," and noting that none of the requested documents required any degree of "candor" or frankness in their preparation).  The court disagrees with plaintiff's contention that disclosing the full Memo subject to a protective order would sufficiently mitigate these concerns.  The knowledge that a memo like this could be released to hypothetical plaintiffs and their counsel suing one's employer is too likely to lead the drafting attorney to rose-color the views presented therein, if indeed the office deems it wise to continue soliciting such opinions in writing.

     *5. Conclusion*

Because the recommendations and analyses contained in the Taylor Memo are not the "smoking gun" plaintiff believes them to be, but rather one attorney's professional opinion of the merits of plaintiff's motion to vacate, the memo is not relevant to the litigation; the DA's Office deliberation for which the memo was created is not the focal point of this suit; and full disclosure carries too great a risk of sacrificing candor in prosecutorial decision-making.  Even assuming that similar analyses of the evidence underlying plaintiff's wrongful conviction may be difficult to obtain elsewhere, that would not, alone, outweigh the above three factors.

**CONCLUSION**

Although the court does not find full disclosure warranted, most of the Memo contains factual matter that can be segregated from the deliberative material within the document.  See Warner, 742 F.2d at 1161;  EPA v. Mink, 410 U.S. 73, 87-92 (1973) (purely factual material contained in deliberative memoranda and severable from its context must be disclosed, unless such factual material is so intertwined with the policymaking process that its disclosure would be inconsistent with the purposes of the privilege).  The County does not object to disclosing to plaintiff the redacted version of the Memo submitted for in camera review.  The court agrees that ///

the deliberative-process privilege applies to the proposed redacted materials and therefore orders disclosure of the nonredacted portions of the Taylor Memo.

Accordingly, IT IS ORDERED that:

1.  Plaintiff's motion to compel (ECF No. 39) is DENIED IN PART and GRANTED IN PART;

2.  Within seven (7) days of the date of entry of this order, defendant Butte County shall produce to plaintiff a copy of the June 22, 2017 memorandum authored by Matthew Taylor reflecting the same redactions previously submitted to the court.  The redactions shall be made in a manner that makes it apparent where material has been redacted.

IT IS SO ORDERED.

Dated:  December 11, 2020

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

crab.0675